RAQUEL E. HECHT, OSB # 933018
Raquel@a-legalservices.com
Alliance Legal LLC
329 E. 8th Ave
Eugene, OR 97401
541-465-2173

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### Eugene Division

| | |
|---|---|
| In the Matter of:<br><br>Fernando Ledesma Gonzalez, an adult<br><br>    Petitioner,<br><br>v.<br><br>DREW BOSTOCK, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO");TODD LYONS, Acting Director of Immigration Customs Enforcement ("ICE"); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS"); U.S. DEPARTMENT OF HOMELAND SECURITY; and PAMELA BONDI, Attorney General of the United States,<br><br>    Respondents. | Case No.<br><br>Agency No. 209 811 487<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>ORAL ARGUMENT REQUESTED<br><br>Expedited Hearing Requested |

# INTRODUCTION

1. Petitioner traveled to the United States to seek asylum when he was just fourteen years old. Petitioner was placed into custody in Douglas, Arizona and was released by Immigration officers.

2. Petitioner applied for asylum based on the death threats he and his family received from cartel members while living in Mexico. Petitioner's life was threatened with a machete held to his neck.

3. Petitioner complied with all requests and requirements set by the immigration court and ICE. Petitioner did not miss a single immigration court hearing or ICE check-in.

4. On June 30, 2025, an immigration judge denied Petitioner's asylum application and ordered him removed from the United States. Petitioner did not receive notice of the denial of his asylum case before he was detained. The immigration judge further set a deadline of July 30, 2025 to appeal his asylum case to the Board of Immigration Appeals.

5. On July 1, 2025, Petitioner attended his ICE check-in, just as he had for each prior check-in. Before Petitioner had time to speak to his attorney and develop a plan to appeal his asylum case, Petitioner was arrested at his check-in and taken into custody. His detention creates formidable obstacles to his ability to appeal his immigration matter and continue with the process to which he is due regarding his immigration case.

6. Respondents did not provide an individualized determination as to Petitioner's risk of flight or danger to society. No circumstances have changed since ICE made its initial determination to release Petitioner from detention that would warrant detention. Petitioner's sole interactions with law enforcement are driving without proper lighting equipment and two speeding violations. However, ICE required Petitioner to appear for

    ICE check-ins after reviewing these charges instead of detaining him. The only recent change to Petitioner's circumstances is that he is now facing a tight deadline to appeal his asylum application.

7. Respondents now seek to detain Petitioner and transfer him away from the District of Oregon where he will face significant obstacles in appealing his asylum application. Respondents do so based not on Petitioner's personal circumstances or individualized facts but in order to restrict Petitioner's ability to appeal his case, a violation of his right to due process.

8. Further, by categorically detaining Petitioner and transferring him away from the district without consideration of his individualized facts and circumstances, Respondents have violated the APA.

9. Respondents cannot evade the law so easily. The U.S. Constitution requires the Respondents provide at least the rights available to him when he filed his application for asylum and to be allowed the opportunity to complete the entire process, including appeal.

10. Accordingly, to vindicate Petitioner's rights, this Court should grant the instant petition for a writ of habeas corpus. Petitioner asks this Court to find that Respondents' attempts to detain, transfer, and deport him are arbitrary and capricious and in violation of the law, and to immediately issue an order preventing his transfer out of this district.

## JURISDICTION

11. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et. seq*.

12. This court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

3- PETITION FOR WRIT OF HABEAS CORPUS

13. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 et. seq., the All Writs Act, 28 U.S.C. §1651, and the Immigration and Nationality Act, 8 U.S.C. § 1252(e)(2).

## VENUE

14. Venue is proper because Petitioner is in Respondents' custody in Portland, Oregon Venue is further proper because a substantial part of the events or omissions giving rise to Petitioner's claims occurred in this District, where Petitioner is now in Respondent's custody. 28 U.S.C. § 1391(e).

15. For these same reasons, divisional venue is proper under Local Rule 3-2.

## REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243

16. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

17. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." Fay v. Noia, 372 U.S. 391, 400 (1963).

18. Petitioner is "in custody" for the purpose of § 2241 because he is arrested and detained by Respondents.

## PARTIES

19. Fernando Ledesma Gonzalez ("Petitioner") is a 22-year-old citizen of Mexico. He is a resident of Albany, Oregon, and is present within the state of Oregon as of the time of the filing of this petition.

20. Respondent Drew Bostock is the Field Office Director for the Seattle Field Office, Immigration and Customs Enforcement and Removal Operations ("ICE"). The Seattle Field Office is responsible for local custody decisions relating to non-citizens charged with being removable from the United States, including the arrest, detention, and custody status of non- citizens. The Seattle Field Office's area of responsibility includes Alaska, Oregon, and Washington. Respondent Bostock is a legal custodian of Petitioner.

21. Respondent Todd Lyons is the acting director of U.S. Immigration and Customs Enforcement, and he has authority over the actions of respondent Drew Bostock and ICE in general. Respondent Lyons is a legal custodian of Petitioner.

22. Respondent Kristi Noem is the Secretary of the Department of Homeland Security (DHS) and has authority over the actions of all other DHS Respondents in this case, as well as all operations of DHS. Respondent Noem is a legal custodian of Petitioner and is charged with faithfully administering the immigration laws of the United States.

23. Respondent Pamela Bondi is the Attorney General of the United States, and as such has authority over the Department of Justice and is charged with faithfully administering the immigration laws of the United States.

24. Respondent U.S. Immigration Customs Enforcement is the federal agency responsible for custody decisions relating to non-citizens charged with being removable from the United States, including the arrest, detention, and custody status of non-citizens.

25. Respondent U.S. Department of Homeland Security is the federal agency that has authority over the actions of ICE and all other DHS Respondents.

26. This action is commenced against all Respondents in their official capacities.

## LEGAL FRAMEWORK

27. The Refugee Act of 1980, the cornerstone of the U.S. asylum system, provides a right to apply for asylum to individuals seeking safe haven in the United States. The purpose of the Refugee Act is to enforce the "historic policy of the United States to respond to the urgent needs of persons subject to persecution in their homelands." Refugee Act of 1980, § 101(a), Pub. L. No. 96-212, 94 Stat. 102 (1980).

28. The "motivation for the enactment of the Refugee Act" was the United Nations Protocol Relating to the Status of Refugees, "to which the United States had been bound since 1968." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 424, 432-33 (1987). The Refugee Act reflects a legislative purpose "to give 'statutory meaning to our national commitment to human rights and humanitarian concerns.'" *Duran v. INS*, 756 F.2d 1338, 1340 n.2 (9th Cir. 1985).

29. The Refugee Act established the right to apply for asylum in the United States and defines the standards for granting asylum. It is codified in various sections of the INA.

30. The INA gives the Attorney General or the Secretary of Homeland Security discretion to grant asylum to noncitizens who satisfy the definition of "refugee." Under that definition, individuals generally are eligible for asylum if they have experienced past persecution or have a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion and if they are unable or unwilling to return to and avail themselves of the protection of their homeland because of that persecution of fear. 8 U.S.C. § 1101(a)(42)(A).

31. Although a grant of asylum may be discretionary, the right to apply for asylum is not. The Refugee Act broadly affords a right to apply for asylum to any noncitizen "who is physically present in the United States or who arrives in the United States[.]" 8 U.S.C. § 1158(a)(1).

32. Because of the life-or-death stakes, the statutory right to apply for asylum is robust. The right necessarily includes the right to counsel, at no expense to the government, see 8 U.S.C. § 1229a(b)(4)(A), § 1362, the right to notice of the right to counsel, see 8 U.S.C. § 1158(d)(4), and the right to access information in support of an application, see § 1158(b)(1)(B) (placing the burden on the applicant to present evidence to establish eligibility.).

33. Noncitizens seeking asylum are guaranteed Due Process under the Fifth Amendment to the U.S. Constitution. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

34. Noncitizens who are applicants for asylum are entitled to a full hearing in immigration court before they can be removed from the United States. 8 U.S.C. § 1229a. Consistent with due process, noncitizens may seek administrative appellate review before the Board of Immigration Appeals of removal orders entered against them and judicial review in federal court upon a petition for review. 8 U.S.C. § 1252(a) *et seq*.

35. Immigration detention should not be used as a punishment and should only be used when, under an individualized determination, a noncitizen is a flight risk because they are unlikely to appear for immigration court or a danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

## FACTUAL BACKGROUND

36. Petitioner is a citizen of Mexico. He was born on October 8, 2002 in Mexico.

37. Petitioner and his family members were threatened with death in Mexico by cartel members. Petitioner was threatened with a machete held to his neck and escaped only due to the assistance of a stranger.

38. On December 19, 2017, Petitioner traveled to the port of entry at Douglas, Arizona to seek asylum. Petitioner was taken into custody and Respondents made the determination to release Petitioner from custody in 2018.

39. In December 2018, Respondents commenced removal proceedings against Petitioner under 8 U.S.C. § 1229a.

40. Respondents alleged he was inadmissible to the United States under 8 U.S.C. § 1182(a)(6)(A)(i) and commanded that he appear for a hearing on June 28, 2018, which he attended.

41. Petitioner was released from custody and was not required to appear for ICE check-ins. Petitioner's sole interactions with law enforcement are driving without proper lighting equipment and two speeding violations.

42. In response to Petitioner's arrest, ICE notified Petitioner that he was required to attend ICE check-ins going forward. Petitioner complied with and appeared for all ICE check-ins, never missing a single appointment. ICE did not require Petitioner to wear an ankle monitor.

43. Petitioner applied for asylum before the Portland Immigration Court on April 5, 2018.

44. Petitioner appeared for his first immigration court hearing in June 2018. After the Immigration Judge notified him that he was not required to attend future hearings, Petitioner's parents attended his hearings on his behalf.

45. Petitioner's asylum application was considered on May 12, 2025. Immigration Judge Hoeppner did not issue an oral decision regarding Petitioner's asylum application and notified him that he would receive a written decision in the upcoming months.

46. On June 30, 2025, Immigration Judge Hoeppner denied Petitioner's asylum application, ordered Petitioner removed from the United States, and set a deadline for appeal of his asylum case for July 30, 2025. Petitioner did not receive notice of the decision. Undersigned Counsel discovered the order of removal while investigating for this writ.

47. On July 1, 2025, Petitioner was attending his ICE check-in where several ICE agents arrested him. They did not provide him any process or access to counsel, even though an

immigration attorney was present at the time of Respondent's arrest and requested an opportunity to speak with Respondent but was denied. The ICE agents did not offer him any opportunity to be heard or represented by counsel prior to arresting and detaining him or while he was in ICE custody in Eugene despite an immigration attorney's direct requests to ICE officers to speak with him.

48. On January 20, 2025, President Donald Trump issued several executive actions relating to immigration, including "Protecting the American People Against Invasion," an executive order (EO) setting out a series of interior immigration enforcement actions. The Trump administration, through this and other actions, has outlined sweeping, executive branch-led changes to immigration enforcement policy, establishing a formal framework for mass deportation. The "Protecting the American People Against Invasion" EO instructs the DHS Secretary "to take all appropriate action to enable" ICE, CBP, and USCIS to prioritize civil immigration enforcement procedures including through the use of mass detention.

49. Petitioner asserts that Respondents are detaining Petitioner without individualized reason and without sufficient changed circumstances. Petitioner has until July 30, 2025 to file an appeal for his asylum case. Respondents are restricting Petitioner's opportunity for appeal by detaining him.

50. On information and belief, Respondents are using the immigration detention system, including extra-territorial transfer and detention, as a means to punish individuals for asserting rights under the Refugee Act.

## CLAIMS FOR RELIEF

### COUNT ONE

**Violation of the Administrative Procedure Act – 5 U.S.C. § 706(2)(A)**

**Not in Accordance with Law and in Excess of Statutory Authority**

**Unlawful Detention**

51. Petitioner restates and realleges all paragraphs as if fully set forth here.

52. Under the APA, a court shall "hold unlawful and set aside agency action" that is an abuse of discretion. 5 U.S.C. § 706(2)(A).

53. An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (*quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

54. To survive an APA challenge, the agency must articulate "a satisfactory explanation" for its action, "including a rational connection between the facts found and the choice made." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (citation omitted).

55. By categorically detaining Petitioner and transferring him away from the district without consideration of his individualized facts and circumstances, Respondents have violated the APA.

56. Respondents have made no finding that Petitioner is a danger to the community.

57. Respondents have made no finding that Petitioner is a flight risk because, in fact, he was arrested while appearing at his ICE check-in.

58. By detaining and transferring the Petitioner categorically, Respondents have further abused their discretion because there have been insufficient changes to his facts or circumstances since the agency made its initial determination to release him from custody in 2018.

59. Respondents have already considered Petitioner's facts and circumstances and determined that he was not a flight risk or danger to the community. There have been no changes to the facts that justify this revocation of his parole.

## COUNT TWO

### Violation of Fifth Amendment Right to Due Process

### Procedural Due Process

60. Petitioner restates and realleges all paragraphs as if fully set forth here.

61. The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. Due process protects "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

62. Due process requires that government action be rational and non-arbitrary. *See U.S. v. Trimble*, 487 F.3d 752, 757 (9th Cir. 2007).

63. While asylum is a discretionary benefit, the right to apply is not. 8 U.S.C. § 1158(a)(1). Any noncitizen who is "physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . .), irrespective of such [noncitizen's] status, may apply for asylum." *Id.*

64. Because the denial of the right to apply for asylum can result in serious harm or death, the statutory right to apply is robust and meaningful. It includes the right to legal representation, and notice of that right, *see id.* §§ 1229a(b)(4)(A), 1362, 1158(d)(4); the right to present evidence in support of asylum eligibility, *see id.* § 1158(b)(1)(B); the right to appeal an adverse decision to the Board of Immigration Appeals and to the federal circuit courts, *see id.* §§ 1229a(c)(5), 1252(b); and the right to request reopening or reconsideration of a decision determining removability, *see id.* § 1229a(c)(6)-(7).

65. Here, Petitioner was detained only one day after he was ordered removed and before Petitioner had even received notice of that his asylum application had been denied. Petitioner was not given time to consult with his counsel to file an appeal for his asylum case before he was detained. If Petitioner is transferred out of the state as intended, he will face severe obstacles to filing an appeal for his asylum application. Respondents have already considered Petitioner's facts and circumstances and determined that he was not a flight risk or danger to the community. There have been no changes to the facts that justify this revocation of his parole. ICE again made the determination that he was not a flight risk or danger to the community by choosing to require him to appear for ICE check-ins instead of detention. The timing of Petitioner's detention indicates Respondent's intent to create obstacles to his right to appeal his asylum application. Detaining him at this critical and time sensitive stage of Petitioner's case without an individualized determination or sufficient changed circumstances is at best arbitrary.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(3) Declare that Petitioner's re-detention without an individualized determination violates the Due Process Clause of the Fifth Amendment;

(5) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner from custody;

(6) Issue an Order prohibiting the Respondents from transferring Petitioner outside of Oregon without the court's approval or if alreaady transferred out of Oregon, that Respondent be transferred back within three days;

(7) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(8) Grant any further relief this Court deems just and proper.


Dated: July 2, 2025

*/s/ signature*
_____
RAQUEL E. HECHT, OSB # 933018
Raquel@a-legalservices.com
Alliance Legal LLC
329 E. 8th Ave
Eugene, OR 97401
541-465-2173